## Wright v. Williams

*Lisa A. Waldman,* for plaintiff.
*Kathleen D. Dautrich,* for defendant.

SCHMEHL, *J.,* December 22, 1995—This opinion is written in support of this court's order of August 21, 1995 disqualifying counsel for the defendant, Kathleen D. Dautrich, Esquire, and any attorneys associated with her, from representing the defendant in this matter. This opinion is written pursuant to Pa.R.A.P. 1925(a).

On June 25, 1985 the plaintiff filed a complaint for child support. On July 16, 1985 the defendant executed a denial of paternity. However, on March 18, 1986 the matter was dismissed without prejudice for failure to prosecute. On July 25, 1986 the plaintiff again filed a complaint for child support.

The child in question, Ikea Gonzalez, was born on June 3, 1985. The results of the Roche Biomedical Laboratories Inc. HLA blood test, dated December 31, 1986 state that the defendant could not be excluded as the biological father and that the probability of pa-

ternity was 99.89 percent as compared to an untested man of the North American Black population.

On November 9, 1987, David R. Dautrich, Esquire was appointed as counsel for the defendant as it appeared that the defendant had insufficient funds to employ counsel to represent him.[1] However, on April 6, 1988, Glenn D. Welsh, Esquire was appointed to replace David R. Dautrich, Esquire as counsel for the defendant. Kathleen D. Dautrich, Esquire was listed on the distribution list for the April 6, 1988 order. The certificate of readiness for trial filed August 14, 1989 shows Kathleen D. Dautrich, Esquire as the attorney for the plaintiff in this matter. Additionally, Attorney Dautrich filed a pretrial memorandum as "special counsel to domestic relations" on September 8, 1989.

As a result of the pretrial conference held September 15, 1989, the matter was set down for trial before the Honorable Grant E. Wesner on December 5, 1989. The hearing was continued to December 14, 1989, and then again to December 21, 1989. On December 15, 1989 a rule was issued upon the plaintiff to show cause why the complaint in support should not be dismissed with prejudice, but such rule was dismissed on December 21, 1989 and the court ordered that a date for trial be set at the earliest possible time.

Inexplicably, there was no action in the file from that point until September 1994 when an order was filed to change the case caption to reflect the defendant's correct name. On April 13, 1995 a rule was issued upon the defendant to show cause, if any, why the petition to confirm the presumption of paternity should not be granted. The petition alleged that genetic tests

---

1. David Dautrich, Esquire is the brother of defendant's present counsel, Kathleen Dautrich, Esquire.

to determine paternity had been performed on all the parties and the results show that there was a 99 percent or greater probability that the defendant was the father of the child, and that 23 Pa.C.S. §4343, effective December 16, 1994, provides that a presumption of paternity is created in cases indicating a 99 percent or greater probability that the defendant is the father. On May 12, 1995, upon consideration of the petition to confirm the presumption of paternity and after hearing, it was ordered that the defendant was found to be the father of Ikea Gonzalez by a preponderance of the evidence.

The matter proceeded to a conference before a domestic relations conference officer in July 1995, but only the defendant appeared. The notes from the conference state that the defendant thought that the plaintiff may have died in a car accident.

On July 20, 1995 Kathleen Dautrich, Esquire entered her appearance on behalf of Joseph Williams. On August 1, 1995 the plaintiff filed a petition to disqualify Kathleen D. Dautrich, Esquire as defendant's counsel in that she was a former special counsel to domestic relations and was the attorney in charge of the prosecution of the paternity matter in the above-captioned case on behalf of the plaintiff from April 1988 until March 1994. On August 3, 1995 all proceedings in the matter were stayed pending disposition of the petition to disqualify counsel. On August 21, 1995 this court issued an order disqualifying Kathleen D. Dautrich, Esquire and any attorneys associated with her from representing the defendant in this matter. The stay was then lifted on August 29, 1995. Kathleen D. Dautrich, Esquire, on behalf of the defendant, filed a notice of appeal of this court's August 21, 1995 order on September

20, 1995. The defendant was granted permission to proceed in forma pauperis on October 17, 1995.

The comments to the Pennsylvania Rules of Professional Conduct urge that an objection by opposing counsel as to a conflict of interest involving counsel be viewed with caution as such an objection could be misused as a technique of harassment. See comment following Pa.R.P.C. 1.9; comment following Pa.R.P.C. 1.7, "conflict charged by an opposing party." Furthermore, the preamble to the Rules of Professional Conduct, under the section "scope," states:

"The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty."

However, although resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation, in litigation, a court may raise the question where there is reason to infer that a lawyer has neglected that responsibility, and where the conflict is such as to clearly call into question the fair or efficient administration of justice, opposing counsel may properly raise the question also. Pa.R.P.C. 1.7, comment "conflict charged by an opposing party." There is nothing to indicate that opposing counsel has

requested Kathleen D. Dautrich, Esquire be disqualified as counsel purely to harass her or impede the proceedings. Rather, this court has grave concerns about the just administration of this case if it were to allow Attorney Dautrich to continue to represent the defendant in this matter.

A party seeking disqualification of their opponent's attorney must establish that (1) a prior attorney-client relationship existed in the case between the moving party and opposing counsel; and (2) the matters involved in counsel's present representation are substantially related to the subject matter of the former representation. *Pennsylvania Power & Light Co. v. Gulf Oil Corp.,* 74 D.&C.2d 431, 433 (1975); *American Can Company v. Citrus Feed Company,* 436 F.2d 1125 (5th Cir. 1971). See also, *Richardson v. Hamilton International Corp.,* 469 F.2d 1382 (3d Cir. 1972), *cert. denied,* 411 U.S. 968, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). Applying this to the present case, this court's order granting the motion to disqualify Attorney Kathleen Dautrich was proper. Attorney Dautrich previously represented the interests of the plaintiff in her capacity as special counsel to domestic relations. She was listed as attorney for plaintiff on the pretrial documents. She filed documents on behalf of the plaintiff. Furthermore, the subject matter is not just "substantially related," it is the same case, still unresolved, in which Attorney Dautrich previously represented the interests opposing those of her present client.

"[The Pennsylvania Supreme Court] has held in several cases that counsel can be disqualified for violations of the code where disqualification is needed to insure the parties receive the fair trial which due process requires. See *American Dredging Co.[v. City of Philadelphia,* 480 Pa. 177, 389 A.2d 568 (1978)]; *City of*

*Philadelphia v. AFSCME*, 503 Pa. 498, 469 A.2d 1051 (1983) . . . ." *In re Estate of Pedrick*, 505 Pa. 530, 542, 482 A.2d 215, 221 (1984). (citations omitted) While it might be appropriate under certain circumstances for the trial court to enforce the Code of Professional Responsibility by disqualifying counsel or otherwise restraining participation or conduct in litigation before them in order to protect the rights of the litigants to a fair trial, that enforcement power is not extended to allow the trial court to use the canons to alter substantive law or punish attorney misconduct. *Pedrick, supra* at 541-42, 482 A.2d at 221. A court is not bound to await disciplinary action before acting to restrain improper conduct where it is disclosed in a case pending in that court. A trial judge, in the exercise of his inherent power to control litigation over which he is presiding and his duty to supervise the conduct of lawyers practicing before him so as to prevent gross impropriety, has power to act where the facts warrant it.

By disqualifying Attorney Dautrich, the court does not seek to impose any kind of punishment, but rather to insure that all parties will receive just and proper consideration in this matter. "The trial court in the first instance has the power to regulate the conduct of attorneys practicing before it, and has the duty to insure that those attorneys act in accordance with the Code of Professional Responsibility." *American Dredging Co. v. City of Philadelphia*, 480 Pa. 177, 183, 389 A.2d 568, 571 (1978). Furthermore, "[w]here a breach of ethics is made to appear, the relief is usually the granting of a motion to disqualify and remove the offending attorney." *Id.* at 184, 389 A.2d at 572. *Slater v. Rimar Inc.*, 462 Pa. 138, 338 A.2d 584 (1975).

Pa.R.P.C. 1.9 states:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

"(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation; or

"(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."

The comment immediately following the rule states in part: "[w]hen a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited." The comment continues to say "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as changing of sides in the matter in question." The matter in question was paternity. In her capacity as special counsel to domestic relations, Kathleen D. Dautrich, Esquire, represented the plaintiff's interests. She now has entered her appearance on behalf of the defendant in the same paternity matter involving the same child. If this cannot be characterized as a change of sides, nothing can.[2]

Pa.R.P.C. 1.11 also disqualifies Kathleen D. Dautrich, Esquire as serving as counsel for the defendant. Pa.R.P.C. 1.11(a) states:

"(a) [E]xcept as law may otherwise expressly permit, a lawyer shall not represent a private client in connection

---

2. The comment following Pa.R.P.C. 1.9 also states that disqualification is for the protection of clients and can be waived, but there is no such waiver in this file.

with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

"(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

"(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule."

Attorney Dautrich represented the plaintiff in her capacity as Special Counsel to Domestic Relations. Under Pa.R.C.P. 1.11, she cannot now represent a private client in the same matter.

It is for the foregoing reasons that the court entered its order of August 21, 1995.